**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| ROBERT D. WALDRON and CHRISTOPHER MILLS, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | )   Docket no. 08-CV-266-P-S ) |
| GEORGE WESTON BAKERIES, INC. and GEORGE WESTON BAKERIES DISTRIBUTION, INC., | ) ) ) ) ) |
| Defendants. | ) |

**ORDER ON MOTION TO DISMISS**

Before the Court is Defendants' Motion to Dismiss (Docket # 9).  As filed, the Motion seeks to dismiss the following claims:  Count II (Tortious Interference with Economic Advantage), Count III (Restraint of Trade) and Count VI (Maine Whistleblower Protection Act).  As explained herein, the Court GRANTS the Motion as to Counts II and III.  With respect to Count VI, the Court concludes the Motion is MOOT.

**I.      LEGAL STANDARD**

Pursuant to Rule 12(b)(6), a party is entitled to have a claim against it dismissed when the allegations on which the claim depends "fail[ ] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  When considering a motion under Rule 12(b)(6), the Court must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences in the plaintiff's favor, and determine whether the complaint, when taken in the light most favorable to the plaintiff, sets forth sufficient facts to support the claim for relief.  Clorox Co. v. Proctor &

1

Gamble Commercial Co., 228 F.3d 24, 30 (1st Cir. 2000); LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998). Pursuant to Rule 8(a), the pleader need only make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Despite this liberal pleading standard, to survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, ---, 127 S. Ct. 1955, 1967 (2007).

## II.   BACKGROUND

This Court has already made detailed findings of fact in this case in connection with its Order on Motions for Preliminary Injunction (Docket # 34). For purposes of the pending motion, the Court limits its discussion to the well-plead factual allegations and reasonable inferences therefrom that are relevant to the specific claims that are the subject of the pending Motion to Dismiss.

Plaintiffs, Robert Waldron and Christopher Mills, are two independent contractors who distribute bread and baked goods under distribution agreements with Defendants George Weston Bakeries, Inc. and George Weston Bakeries Distribution, Inc. (together, "GWBD" or "Defendant"). Pursuant to their distribution agreements, Waldron and Mills own exclusive rights to distribute various brands of bread products within delineated sales areas around Portland, Maine. On July 15, 2008, both Plaintiffs received hand-delivered letters from GWBD notifying them that their distribution rights were being terminated immediately. The termination letters alleged both Plaintiffs had engaged in activity that constituted a non-curable breach of their individual distribution agreements with GWBD. Specifically, GWBD alleged that Waldron and Mills attempted to extort money from GWBD in connection with settlement negotiations related

to then-ongoing litigation between the parties in state court. Plaintiffs dispute this allegation and claim GWBD breached the Distribution Agreement when it invoked the immediate termination provision.

Under the terms of the Distribution Agreement, an immediate termination entitled GWBD to begin operating the terminated distribution routes, deducting from the revenues generated the reasonable expenses of this operation and delivering the balance to the distributor, in this case Waldron and Mills, who still own the distribution rights. Per this provision of the Distribution Agreement, GWBD operated the routes of both Waldron and Mills until approximately September 15, 2008, when Waldron and Mills resumed operations of their individual routes pursuant to the Court's September 10, 2008 Preliminary Injunction (Docket # 34). Nonetheless, if GWBD were to be successful in its defense of this litigation, it would seek to continue its announced plans of immediately terminating Plaintiffs' distribution agreements.

Waldron and Mills now allege that GWBD's attempted immediate termination of their distribution rights not only amounted to a breach of the distribution agreements (Count I) but also amounted to intimidation that interfered with an economic advantage. The Amended Complaint also asserts that GWBD conspired to restrain the commerce that results from Plaintiffs' ownership of their respective distribution routes.


**III.   DISCUSSION**

Although Defendants' Motion initially sought dismissal of three claims, the Court need only discuss Counts II and III. The third claim under the Maine Whistleblower Protection Act (Count VI) was dropped in Plaintiffs' Amended Complaint (Docket # 11), which was docketed

after Defendants' Motion to Dismiss was filed.  Thus, to the extent Defendants' Motion sought dismissal of Count VI, the Motion is MOOT.

### A.  Count II:  Tortious Interference with Economic Advantage

Count II asserts a common law claim for tortuous interference with prospective economic advantage.  As both sides agree, a claim under Maine law for tortious interference with prospective economic advantage requires a plaintiff to prove the following elements:  "(1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages."  Rutland v. Mullen, 798 A.2d 1104, 1110 (Me. 2002).  Fraud or intimidation is vital to a claim for tortious interference "because it distinguishes unlawful conduct from conduct inherent in a healthy competitive economic environment." Id. at 1110 n.5.

Defendants assert that "[t]he Complaint fails to allege the contract or 'economic advantage' with which Plaintiffs claim Defendants interfered." (Defs.' Mot. (Docket # 9) at 5.) As Defendants correctly point out GWBD's alleged interference with the Distribution Agreements, which is extensively described in Plaintiffs' Amended Complaint, cannot form the basis for a tortious interference claim.  See Perkins v. City Enterprises I, LLC, No. CV-03-190, 2004 WL 3196205, at *9 (Me. Super. 2004) ("At the outset, a claim for tortious interference with a contract cannot be brought against someone who is a party to the contract in question.  A party who breaches a contract can be sued for breach but not for tortious interference.")  In response, Plaintiffs acknowledge that the Amended Complaint may not be explicit but assert that the prospective economic advantage that serves as the basis for the tortuous interference claim is the relationship that Waldron and Mills have with the customers to whom they sell and deliver products.  If necessary, Plaintiffs offer to further amend their Complaint in order to explicitly

designate this relationship as the prospective economic advantage.  (See Pls.' Response (Docket # 26) at 6 n.2.)

Even with this amendment, Plaintiffs would still fail to state a tortious interference claim. First, although the Amended Complaint plainly states "Defendants' actions constitute intimidation," Plaintiffs do not allege any intimidation by GWBD directed at Plaintiffs' customers or at the relationship that Waldron and Mills have with their customers. (Am. Compl. (Docket # 11) ¶ 43.) Second, there are no allegations in the Amended Complaint explaining how any GWBD interference affected the relationship between Plaintiffs and their delivery customers and thereby proximately caused damage to Plaintiffs.  Plaintiffs' Response characterizes GWBD's implicit threats to "pursue criminal action" against Plaintiffs for extortion, as well as "seizing control of the Plaintiffs' distribution routes," as acts that constitute intimidating interference.  (Pls.' Response (Docket # 26) at 6-7.)  Plaintiffs argue that these GWBD actions, if proven, would entitle Plaintiffs to relief on a claim of tortious interference with economic advantage.  However, none of these alleged actions amount to intimidation that was directed at the delivery customers, nor is there any allegation in the Amended Complaint that these actions caused any delivery customer to end or curtail its relationship with either Plaintiff.  See White v. Meador, 215 F. Supp. 2d 215, 219-20 (D. Me. 2002) (explaining that the Maine Law Court and other jurisdictions have generally required that the intimidating interference that serves as the basis for a tortious interference claim must be "directed at third parties rather than at the plaintiff").  In fact, nothing in Plaintiffs' Amended Complaint allows the Court to infer that Plaintiffs' customers knew of or were affected by these alleged acts of intimidation by GWBD.

Having considered all of the factual allegations contained in the Complaint and any reasonable inferences to be drawn in Plaintiffs' favor, the Court concludes that Plaintiffs fail to

state any of the three required elements for a claim of tortuous interference with economic advantage.  The Court will dismiss Count II, as pled, for failure to state a claim.[1]

### B.  Count III:  Restraint of Trade

Count III of Plaintiffs' Amended Complaint asserts that Defendants violated 10 M.R.S.A § 1101 et seq., which is Maine's antitrust statute.[2]  To withstand a motion to dismiss this claim a complaint must at least allege the following elements:   "(1) the existence of a contract, combination or conspiracy among two or more separate entities that (2) unreasonably restrains trade and (3) affects interstate or foreign commerce."  Norte Car Corp. v. FirstBank Corp., 25 F. Supp. 2d 9, 16 (D.P.R. 1998).  Although Plaintiffs' Amended Complaint alleges that GWBD "conspired to restrain . . . commerce," there is no allegation (or reasonable inference) that another separate entity participated in the claimed "conspiracy" with GWBD.  (Am. Compl. ¶ 45.)  As Defendants correctly argue, the absence of any alleged "co-conspirator" is fatal to Plaintiffs' antitrust claim.  See, e.g., Gilbuilt Homes, Inc. v. Cont'l Homes, 667 F.2d 209, 210 (1st Cir. 1981) (upholding the dismissal of a claim under 15 U.S.C. § 1 when "no conspiracy or agreement with other persons or entities was pleaded"); In re Southeastern Milk Antitrust Litig., 555 F. Supp. 2d 934, 941-42 (E.D. Tenn. 2008).  In short, there is not "enough factual matter . . . to suggest that an agreement was made" and the Court concludes that the Amended Complaint does not "raise a reasonable expectation that discovery will reveal evidence of illegal agreement."  Twombly, 550 U.S. 544, ___, 127 S. Ct. 1955, 1965-66.  Therefore, the Court will dismiss Count III of the Amended Complaint.

---

[1] The Court will not grant Plaintiffs leave to amend their Complaint based on that the amendment proposed in footnote 2 of Plaintiffs' Response because this amendment alone would be futile.  However, Plaintiffs are free to move to amend in accordance with Rule 15 if they believe they can allege the necessary facts for all three elements of a claim for tortious interference with economic advantage, as explained in this Order.

[2] In analyzing claims under this Maine statute, the First Circuit has endorsed the use of federal case law developed under the Sherman Act, 15 U.S.C. § 1, which is the parallel federal antitrust statute.  See Davric Maine Corp. v. Rancourt, 216 F.3d 143, 149 (1st Cir. 2000).

**IV.    CONCLUSION**

For the reasons stated herein, Defendants' Motion to Dismiss (Docket # 9) is GRANTED IN PART and DENIED IN PART AS MOOT.   In accordance with this ruling, the Court DISMISSES Counts II and III of the Amended Complaint for failure to state a claim.

SO ORDERED.

/s/ George Z. Singal
Chief U.S. District Judge

Dated this 16th day of December, 2008.